UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEREMY LEE STUTTS,<br><br>                      Plaintiffs,<br>        v.<br><br>COUNTY OF LYON, *et al.*,<br><br>                      Defendants. | Case No. 3:19-cv-00552-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Jeremy Lee Stutts alleges that Defendants[1] violated his constitutional rights when they performed a body cavity search of Plaintiff. (ECF No. 1 ("Complaint").) Before the Court are Defendant CTRMC's motion to dismiss ("CTRMC's Motion") (ECF No. 8), and Defendants Mayer and Elmquist's motion to dismiss ("Mayer and Elmquist's Motion") (ECF No. 17).[2] As further discussed below, the Court finds that Plaintiff fails to state a claim against CTRMC, Mayer, and Elmquist (collectively, "Moving Defendants") and will therefore grant both motions.[3]

**II.   BACKGROUND**

The following background facts are adapted from the Complaint.

---

[1]Defendants are Carson Tahoe Regional Health Center ("CTRMC") (who claims it was erroneously named Carson Tahoe Health), Maurice Mayer, Stephanie Elmquist, Erik Maki, Al McNiel, Tyrell Joyner, Erik Pruitt, Brad Pope, and Nicholas Baugh.

[2]The Court has reviewed Plaintiff's responses to both motions (ECF Nos. 11, 25) and Defendants' respective replies (ECF Nos. 15, 28). The Court also grants the parties' stipulation for extension of time for Mayer and Elmquist to file a reply (ECF No. 24) *nunc pro tunc.*

[3]This order only addresses the two motions filed by CTRMC, Mayer, and Elmquist. It does not affect claims as to any remaining Defendants.

The Lyon County Sheriff's Department was investigating Plaintiff and Samantha Lee Gifford because it believed Plaintiff and Gifford were trafficking drugs. (ECF No. 1 at 3.) According to Defendant Deputy Tyrell Joyner, his sources told him that Gifford was known to hide contraband narcotics in her vagina. (*Id.* at 2, 3.) Joyner obtained a warrant that allowed a search of "bodily fluids," but did not authorize a body cavity search. (*Id.* at 3.) On September 14, 2017, Defendants Joyner, Deputy Erik Pruitt, and Sergeant Brad Pope seized Plaintiff's vehicle. (*Id.* at 3.) They searched Plaintiff's vehicle under the warrant but did not find any contraband. (*Id.* at 3.)

Defendant Deputy Nicholas Baugh transported Plaintiff and Gifford to CTRMC, with Pope and Pruitt escorting. (*Id.* at 3-4.) At the hospital Elmquist, a CTRMC employee, examined Gifford's vagina. (*Id.* at 4.) The search yielded methamphetamine in a blue bag. (*Id.*) Baugh, Pruitt, and Pope then conducted a strip search of Plaintiff, and ordered Plaintiff to perform a urine test. (*Id.*) Baugh, Pruitt, and Pope next ordered Maki, another CTRMC employee, to x-ray Plaintiff to see if he had any contraband in his body. (*Id.* at 2, 4.) After finding nothing on the x-ray, Baugh, Pruitt and Pope ordered Maki to perform a CAT scan on Plaintiff. (*Id.* at 4.) The CAT scan also indicated no concealed objects inside of Plaintiff. (*Id.*)

Nonetheless, Baugh, Pruitt, and Pope then directed Defendant Mayer, a doctor and a CTRMC employee, to physically inspect Plaintiff's anus. (*Id.* at 2, 4.) Elmquist was present and assisted with these procedures. (*Id.* at 4.) Plaintiff was cuffed and chained to the bed while he screamed in protest. (*Id.*) Mayer then "shoved" a metal anoscope into Plaintiff's anus. (*Id.*) Pope said that Plaintiff was "clean as a whistle." (*Id.*) Plaintiff protested that what Defendants had done was illegal. (*Id.*) In response, Pruitt and Pope laughed at Plaintiff, and told him they could do whatever they wanted because of their authority—and that if Plaintiff reported the incident they would make it happen "again and again" and it would be "ten times worse." (*Id.*) As a result of Defendants' actions, Plaintiff has experienced physical pain, humiliation, and PTSD symptoms. (*Id.* at 5.)

Plaintiff alleges that Defendants violated his civil rights under 42 U.S.C. § 1983.

(ECF No. 1.) As relevant to the motions before the Court, Plaintiff specifically asserts claims of practice, policy, ratification, delegation, and failure to train under Section 1983, and negligence, negligent hiring, negligent training, supervision, negligent breach of duty of care against CTRMC. (*Id.* at 10-12, 13-15.) Plaintiff also asserts claims of excessive use of force and due process violations under the Fourth and Fourteenth Amendments, as well as assault, battery, sexual assault, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") against Mayer and Elmquist. (*Id.* at 6-8, 12-13.)

### III.  LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the

defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

While a court generally cannot consider matters beyond the pleadings on a motion to dismiss, the court may consider documents "'properly submitted as part of the complaint'" and "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal quotations omitted); *see also Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.").

**IV.   DISCUSSION**

Moving Defendants seek dismissal of all claims asserted. (*See* ECF Nos. 8, 17.)[4] The Court first addresses their Section 1983 arguments, then their arguments as to Plaintiff's negligence claims, and finally their arguments as to Plaintiff's other tort claims.

**A.   Section 1983 Claims**

Mayer and Elmquist argue that Plaintiff fails to state a claim against them under Section 1983 because Plaintiff does not sufficiently plead that they are state actors. (ECF No. 17 at 6-7.) Plaintiff concedes that purely private action is not state action but responds that because Mayer and Elmquist were willful participants in joint activity with officers[5],

---

[4] CTRMC joined in Mayer and Elmquist's Motion in its entirety. (ECF No. 18; *see also* ECF No. 17.)

[5] Plaintiff raises this argument for the first time in his response. (*Compare* ECF No. 1 *with* ECF No. 25 at 4-5.) Therefore, the Court will not consider this argument. See *Hal*

4

their conduct amounted to state action. (ECF No. 25 at 4-5.) Additionally, CTRMC argues that Plaintiff's Section 1983 claims against it should be dismissed because Section 1983 does not permit respondeat superior liability, and because Plaintiff does not plead sufficient facts to establish that CTRMC is directly responsible for Plaintiff's injuries. (ECF No. 8 at 3-4.) Plaintiff counters that he is not asserting a respondeat superior theory, instead alleging that CTRMC directly participated in the alleged unlawful conduct. (ECF No. 11 at 2-4.) The Court agrees with Moving Defendants on each argument.

To state a claim under Section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). A private entity may be subject to liability under Section 1983 in certain situations. *Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 954 (9th Cir.2008). The Court must begin its analysis with the presumption that private conduct does not constitute governmental action. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)."State action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Villegas,* 541 F.3d at 955 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)). However, "the mere fact that the government compelled a result does not suggest that the government's action is fairly attributable to the private defendant." *Sutton*, 192 F.3d at 838.

Plaintiff's allegations do not establish that Mayer and Elmquist are state actors. Plaintiff merely alleges that CTRMC is a "corporate entity," and that Mayer and Elmquist are employees of CTRMC. (ECF No. 1 at 2.) Moreover, Plaintiff only asserts a single

---

*Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). Moreover, the Complaint does not allege joint activity nor can the allegations be reasonably inferred that Mayer and Elmquist were willful participants in any joint activity by the state actors. To the contrary, Plaintiff alleges that Mayer performed, and Elmquist assisted in, an anoscopy at the officers' direction. (ECF No. 1 at 4.)

5

factual allegation to the effect that Mayer and Elmquist acted as state actors—that Mayer performed, and Elmquist assisted in, an anoscopy of Plaintiff at the direction of the officers. (ECF No. 1 at 4.) Based on these allegations, the Court finds that Plaintiff has not sufficiently pleaded that Mayer and Elmquist are state actors. At most, Plaintiff has alleged that Mayer and Elmquist were compelled to act by the officers. That is insufficient to establish the close nexus between the state and these Defendants' private conduct required to find that Mayer and Elmquist were state actors. *See Sutton*, 192 F.3d at 838 ("Without some other nexus between the private entity and the government, we would expect that the private defendant is not responsible for the government's compulsion. . . .."). The Court will therefore dismiss Plaintiff's Section 1983 claims against Defendants Mayer and Elmquist.

As to CTRMC, Plaintiff argues that it directly participated in the body cavity search of Plaintiff by pointing to Paragraphs 25-32 of the Complaint, which allege that Plaintiff was taken to CTRMC "with the intent to have [a] body cavity search[]" performed[6] and that the search was performed with CTRMC equipment. (ECF No. 11 at 3; *see also* ECF No. 1 at 3-4.) Based on these allegations, Plaintiff asks the Court to "infer . . . that [CTRMC] affirmatively acquiesced and directly assisted in the acts of law enforcement. . .." (ECF No. 11 at 3.) Plaintiff also points to Paragraph 55 of the Complaint, contending that CTRMC "approved of and ratified" the body cavity search and that it is reasonable to infer that CTRMC "had some sort of standing agreement . . . with law enforcement to use their facilities for such purposes." (*Id.*; *see also* ECF No. 1 at 6.)

The Court is unpersuaded by both of Plaintiff's arguments. Plaintiff has not alleged that CTRMC was even aware that a body cavity search was being performed, much less that it directly assisted in, or approved of, any search. (*See* ECF No. 1 at 3-4 (lacking any

---

[6]Plaintiff raises a new factual allegation against CTRMC for the first time in his response—that CTRMC staff admitted Plaintiff "for the sole purpose" of conducting a warrantless body cavity search. (ECF No. 11 at 3.) However, as discussed *supra* note 5, because this allegation falls outside of the pleadings, the Court may not consider it. *See Hal Roach Studios, Inc.* 896 F.2d at 1555.

allegations to this effect).) Plaintiff fails to state a claim under Section 1983 against CTRMC, and the Court will thus dismiss these claims against CTRMC.

### B.     Negligence

Moving Defendants argue that Plaintiff's negligence claims fall within Nevada's medical malpractice statutes and, therefore, are time-barred. (ECF No. 8 at 5-7.)[7] Moving Defendants also argue that Plaintiff's claims are void ab initio because Plaintiff did not file a supporting affidavit from a medical expert as Nevada law requires for medical malpractice claims. (*Id.* at 5-8.) Plaintiff counters that none of his negligence claims should be considered medical malpractice claims because Plaintiff was not brought to the hospital for the diagnosis or treatment of an illness or injury—instead, he was brought to have an illegal body search cavity search performed. (ECF No. 11 at 5.) The Court finds that Plaintiff's negligence claims fall under Nevada's medical malpractice statutes. As such, Plaintiff's claims are time-barred as the applicable statute of limitations has run. Because this is dispositive of the issue, the Court declines to address the medical expert supporting affidavit requirement.

The Court first finds that Plaintiff's claims fall under Nevada's medical malpractice statutes. "Allegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice." *Szymborski v. Spring Mountain Treatment Center*, 403 P.3d 1280, 1284 (Nev. 2017.) In contrast, "when a hospital performs nonmedical services, it can be liable under principles of ordinary negligence." *Id.* Because the difference between the two claims can be subtle, courts "must look to the gravamen or substantial point or essence of each claim rather than its form to see whether each individual claim is for medical malpractice or ordinary negligence." *Id.* at 1285. "Claims that are 'substantially related' to medical treatment or claims that require expert testimony to determine the appropriate standard of care qualify as medical malpractice claims." *Shorter v. City of Las Vegas*, 2:16-cv-00971-KJD-CWH, 2019 WL 266285, at *4 (D. Nev.

---

[7]Mayer and Elmquist joined in the negligence portions of CTRMC's Motion. (ECF No. 14; see also ECF No. 8 at 5-8.)

7

Jan. 17, 2019) (citing *Szymborski*, 403 P.3d at 1284-1285).

Here, Plaintiff alleges that he was brought to a hospital and underwent an x-ray, a CAT scan, and an anoscopy without a valid search warrant. (ECF No. 1 at 4.) Plaintiff asserts that these procedures were performed by three health care providers—Mayer, Elmquist, and Maki.[8] (*Id.*) Plaintiff argues that these procedures were performed without a medical purpose. (*Id.* at 13.) Based on these allegations, the gravamen of Plaintiff's negligence claims is medical malpractice. Essentially, Plaintiff alleges that Mayer, Elmquist, and Maki should not have performed these procedures without additional information—either a valid warrant or some indication of medical purpose. Determining whether these procedures were performed without a medical purpose necessarily involves evaluating Mayer and Elmquist's medical judgment—specifically, whether a similarly trained and experienced health care provider would have performed the anoscopy procedure on a patient who had already underwent an x-ray and CAT scan with nothing found. *See* NRS 41A.015. As such, the Court finds that Plaintiff's negligence claims against CTRMC must be considered claims of medical malpractice. *See Szymborski*, 403 P.3d at 1284-1285.

Under Nevada law, "a medical malpractice case may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first." *See Libby v. Eighth Jud. Dist. Ct.*, 325 P.3d 1276, 1279 (Nev. 2014) (quoting NRS 41A.097(2)). "[A] plaintiff discovers his injury when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of his cause of action." *Winn v. Sunrise Hosp. & Medical Center*, 277 P.3d 458, 462 (Nev. 2012) (internal quotation marks omitted).

Here, Plaintiff alleges that the anoscopy occurred on September 14, 2017. (ECF

---

[8]NRS 41A.017 states that a "[p]rovider of health care" includes licensed physicians, physician assistants, and "physicians' professional corporation[s] . . . that employs any such person and its employees."

8

No. 1 at 3.) Plaintiff protested the procedure as it occurred. (Id.) After the procedure, Plaintiff further protested "that what had just happened was illegal." (*Id.*) These facts establish, and Plaintiff does not seem to dispute, that Plaintiff discovered his injury on September 14, 2017. Therefore, the one-year statute of limitations period expired on September 14, 2018. Because Plaintiff filed this action on September 5, 2019 (ECF No. 1), it falls outside of the statute of limitations. The Court thus dismisses Plaintiff's negligence/medical malpractice claims. *See Bemis v. Estate of Bemis*, 967 P.2d 437, 440 (Nev. 1998) (finding dismissal for failure to state a claim appropriate on statute of limitations grounds "when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the facts giving rise to the cause of action.") (internal quotation marks omitted).

### C.     State Tort Claims

Moving Defendants argue that the state tort claims—assault, battery, sexual assault, IIED, and NIED—should be dismissed for failure to state a claim. (ECF No. 17 at 10-13.)[9] Specifically, Defendants contend that Plaintiff does not plead any facts alleging the intent requirement of assault and battery. (ECF No. 17 at 10-11.) Defendants further contend that Plaintiff's sexual assault claim completely lacks factual allegations. (*Id.* at 11-12.) They also argue that Plaintiff does not plead the outrageous conduct or intent elements of IIED, and that Plaintiff fails to allege any facts that state a claim for NEID. (*Id.* at 12-13.)

As Defendants assert, Plaintiff fails to address any of these arguments in his response. (*See* ECF No. 28 at 9; *see also* ECF No. 25.) Therefore, the Court dismisses Plaintiff's assault, battery, sexual assault, IIED and NEID claims against Mayer and Elmquist (and CTRMC to the extent Plaintiff asserts these claims against CTRMC). *See Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999-BEN WVG, 2014 WL 1404877, at *2-3 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim

---

[9]As noted *supra* note 4, CTRMC joined in Mayer and Elmquist's Motion. (ECF No. 18.)

9

raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that a claim raised in the complaint was waived when it was not re-raised in response to a motion to dismiss).

**V.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Carson Tahoe Regional Health Center's motion to dismiss (ECF No. 8) is granted.

It is further ordered that Defendants Maurice Mayer and Stephanie Elmquist's motion to dismiss (ECF No. 17) is granted.

It is further ordered that the parties' stipulation for extension of time for Defendants Mayer and Elmquist to file a reply (ECF No. 24) is granted *nunc pro tunc*.

DATED THIS 17th day of April 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE